UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC DOUGLAS,

                                        Plaintiff,

            v.

CITY OF PEEKSKILL, *et al.*,

                                        Defendants.

No. 21-CV-10644 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Arthur G. Larkin, III, Esq.
Hale & Monico LLC
New York, NY
*Counsel for Plaintiff*

Edward J. Phillips, Esq.
Keane & Beane
White Plains, NY
*Counsel for Defendant*

John J. Walsh, II, Esq.
Paul E. Svensson, Esq.
Hodges Walsh & Burke LLP
White Plains, NY
*Counsel for Defendant*

James A. Randazzo, Esq.
Portale Randazzo LLP
White Plains, NY
*Counsel for Defendant*

Drew W. Sumner, Esq.
Sumner Law LLP
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Marc Douglas ("Plaintiff") brings this Action against the City of Peekskill ("Peekskill"), Detective Marcos Martinez ("Detective Martinez"), and Detective Todd Gallaher ("Detective Gallaher") (collectively, "Defendants"), alleging that Defendants denied him a right to fair trial in violation of 42 U.S.C. § 1983 and maliciously prosecuted him in violation of both 42 U.S.C. § 1983 and state law.  Before the Court is Defendants' Joint Motion for Summary Judgment (the "Motion").  (Not. of Mot. for Summ. Judgment ("Not. Mot.") (Dkt. No. 157); Mem. of Law in Supp. of Mot. for Summ. Judgment ("Defs. Mem.") (Dkt. No. 158).)[1]  For the reasons discussed below, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1.  (*See* Defs. Rule 56.1 Statement ("Defs. 56.1") (Dkt. No. 159); Pl. Response Rule 56.1 Statement and Statement of Additional Material Facts ("Pl. 56.1" and "Pl. 56.1(b)") (Dkt. No. 170);[2] Defs. Response to Pl.'s Statement of Additional Material Facts ("Defs. Resp. 56.1") (Dkt. No. 186).)[3]  Additionally, where necessary, the Court cites directly to the admissible evidence submitted by the Parties.  The facts as described below are undisputed unless otherwise noted.

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

[2] For the sake of clarity, the Court will refer to Plaintiff's response to Defendants' 56.1 Statement (Dkt. No. 170, p. 1–31) as "Pl. 56.1" and Plaintiff's Statement of Additional Material Facts (Dkt. No. 170, p. 32–70) as "Pl. 56.1(b)."

[3] Where the Parties identify disputed facts but with semantic objections only or by asserting irrelevant facts, which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact.  *See Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of [the] [p]laintiff's purported

On February 25, 2006, at approximately 2:00 P.M., Jerry "Loopey" Newton was shot in the leg by two assailants in an apartment belonging to his then-girlfriend in Peekskill, New York. (*See* Defs. 56.1 ¶¶ 2–4; Pl. 56.1 ¶¶ 2–4; Pl. 56.1(b) ¶ 7; Defs. Resp. 56.1 ¶ 7; Declaration of James A. Randazzo ("Randazzo Decl.") Ex. U ("Newton Dep.") 8:21–23 (Dkt. No. 160-20).) The assailants damaged the door, doorframe, and hinges to gain entry to the apartment. (*See* Pl. 56.1(b) ¶ 8; Defs. Resp. 56.1 ¶ 8.)

Upon being shot, Jerry Newton called his sister, Yolanda Newton, who contacted the police. (*See* Defs. 56.1 ¶¶ 5–7; Pl. 56.1 ¶¶ 5–7.) Martinez and Gallaher were among the officers who responded, along with Police Officers ("P.O.s") Christopher Vazeos and Gregory Jones. (*See* Defs. 56.1 ¶ 14; Pl. 56.1 ¶ 14.) The Parties dispute whether Jerry Newton identified one of his assailants as Plaintiff Marc Douglas to his sister Yolanda Newton and police at the time of the shooting. (*Compare* Defs. 56.1 ¶¶ 10–11 *and* Randazzo Decl. Ex. I ("Yolanda Newton Dep.") 13:24–14:14 (Dkt. No. 160-8) *with* Pl. 56.1 ¶ 10–11; Pl. 56.1(b) ¶ 3 *and* Randazzo Decl. Ex. B ("Trial Tr.") 303:24–304:7 (Dkt. No. 160-23) *and* Newton Dep. 13:13–14:7.)

---

denials—and a number of [its] admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant[], often speaking past [the] [d]efendant[]' asserted facts without specifically controverting those same facts. . . . [A] number of [the] [p]laintiff['s] purported denials quibble with [the] [d]efendant['s] phraseology, but do not address the factual substance asserted by [the] [d]efendant[]."); *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) (explaining that the plaintiff's 56.1 statement violated the rule because it "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant, without specifically controverting those facts," and "[i]n other instances, . . . neither admits nor denies a particular fact, but instead responds with equivocal statements"); *Goldstick v. The Hartford, Inc.*, No. 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (noting that the plaintiff's 56.1 statement "does not comply with the rule" because "it adds argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions [the] plaintiff has been compelled to make").

At the scene, Yolanda Newton told P.O. Jones that she was "not aware of any persons who had done this to her brother."  (Pl. 56.1(b) ¶ 24; Defs. Resp. 56.1 ¶ 24.)  P.O. Jones was also told by Jerry Newton's then-girlfriend, Courtney Jones, that she was "not aware of any person(s) who may have done this to the victim" or "any person(s) that Mr. Newton was having major problems with recently," but that she may have overheard two other parties, Mikey Scott and Marvin Coles, making threats towards Mr. Jerry Newton a few weeks before.  (See Pl. 56.1(b) ¶¶ 26–27; Defs. Resp. 56.1 ¶¶ 26–27.)  Gallaher found Mr. Newton's cellphone, which had a missed "direct connect" from Plaintiff from 1:34 P.M.  (See Defs. 56.1 ¶¶ 31–35; Pl. 56.1 ¶¶ 31–35.)

P.O. Vazeos followed Jerry Newton in the ambulance and to the hospital, and repeatedly questioned him about the identity of his assailant.  (See Pl. 56.1(b) ¶ 59–63; Defs. Resp. 56.1 ¶ 59–63; Trial Tr. 544:15–545:20.)  At the hospital, Mr. Newton signed a statement identifying Marc Douglas as one of his assailants.  (See Defs. 56.1 ¶ 40; Pl. 56.1 ¶ 40.)  The Parties dispute the extent and voluntariness of this identification and the accompanying statement that Mr. Newton signed.  Plaintiff argues that Mr. Newton never actually identified Plaintiff as an assailant, and merely stated that Plaintiff was the last person he had spoken to before being shot.  (Pl. 56.1(b) ¶¶ 68–69.)  Defendants allege that Mr. Newton told P.O. Vazeos directly that Plaintiff had shot him.  (Defs. 56.1 ¶¶ 40–46; Defs. Resp. 56.1 ¶¶ 68–69.)  Since Plaintiff's conviction, Mr. Newton has attested that he signed the statement at the hospital because of

pressure from the police.  (*See* Decl. of Arthur Larkin ("Larkin Decl.") Ex. 23 ("Newton Affidavit") 2 (Dkt. No. 169-23).) [4]

Plaintiff was arrested on February 25, 2006, following Mr. Newton's identification.  (*See* Defs. 56.1 ¶ 47; Pl. 56.1 ¶ 47.)  The Parties dispute whether Plaintiff was arrested in his home or outside of it.  (*See* Pl. 56.1(b) ¶¶ 86–88; Defs. Resp. 56.1 ¶¶ 86–88.).  During his interrogation by Martinez and Gallaher, Plaintiff provided a detailed alibi about his whereabouts over the course of the day, claiming he had visited several jewelry stores (including Lucky Jewelry) and a gas station in the Bronx with a friend, Marcus Shelton.  (*See* Pl. 56.1(b) ¶¶ 95–116, 144–146; Defs. Resp. 56.1 ¶¶ 95–116, 144–146.)  In their report of the interrogation, Martinez and Gallaher only documented that Plaintiff claimed to be in the Bronx during the time of the attack, but did not document the locations he claimed to have been.  (*See* Pl. 56.1(b) ¶ 150; Defs. Resp. 56.1 ¶ 150.)

To support his alibi, Plaintiff's attorney obtained surveillance footage from the Bronx gas station in April 2006.  (*See* Pl. 56.1(b) ¶ 188; Defs. Resp. 56.1 ¶ 188.)  After reviewing the footage, Plaintiff's attorney and his father discovered that the only missing footage in the gas station's records was from the day of the incident.  (*See* Pl. 56.1(b) ¶ 195; Defs. Resp. 56.1 ¶ 195.)  Plaintiff alleges this is evidence that Detective Martinez found and erased the surveillance footage.  (*See* Pl. Opp. 21.)  Defendants, however, allege that Detective Martinez went to the gas station in March 2007, over a year after the attack, and that when he inquired about surveillance footage, "one of the workers" told him the security cameras were inoperable. (*See* Pl. 56.1(b) ¶ 197; Defs. Resp. 56.1 ¶ 197.)

---

[4] For clarity, citations to the Newton Affidavits will be labeled by pages, rather than paragraphs, because Exhibit 23 (Dkt. No. 169-23) contains two affidavits, each with its own set of numbered paragraphs.

In detailing his alibi during his police interrogation, Plaintiff also told Defendants that he found out about the attack against Newton because of a phone call he received from Eddie Reeves.  (*See* Pl. 56.1(b) ¶ 153; Defs. Resp. 56.1 ¶ 153).  Defendants never contacted Reeves. (*See* Pl. 56.1(b) ¶ 153; Defs. Resp. 56.1 ¶ 154.)

The Parties dispute whether Martinez ever interviewed another key witness, Marcus Shelton, and whether Shelton corroborated Plaintiff's alibi.  (*Compare* Pl. 56.1(b) ¶¶ 156, 159–62 *with* Defs. Resp. 56.1(b) ¶¶ 156, 159–62 *and* Larkin Decl. Ex. 17 ("Shelton Affs.") 4–5, 8 (Dkt. No. 169-17).)[5]  Martinez never documented any interview with Shelton.  (*See* Pl. 56.1(b) ¶ 164; Defs. Resp. 56.1 ¶ 164.)[6]

Furthermore, the Parties dispute the testimony of Plaintiff's third alibi witness—Mike Baron, the manager of Lucky Jewelry.  Defendants allege that Mike Baron told Martinez that "he had been contacted by a person stating that he was Marc Douglas' brother and this person told him that if anyone asked if Marc Douglas had been in the store on February 25, 2006 he was to tell them 'Yes.'"  (*See* Defs. 56.1 ¶ 110 (internal quotations omitted).)  Plaintiff disputes that Baron ever made such a statement.  (*See* Pl. 56.1 ¶ 110; Pl. 56.1(b) ¶ 235.)

At the time of his arrest, Plaintiff was driving Mr. Newton's car, which Plaintiff borrowed with Mr. Newton's permission.  (*See* Defs. 56.1 ¶ 58; Pl. 56.1 ¶ 58; Randazzo Decl Ex. L. ("Douglas Hr'g Tr.") 80:8–81:20 (Dkt. No. 160-11); Newton Dep. 11:8–11.)  The keys to the

---

[5] For clarity, citations to the Shelton Affidavits will be pages, rather than paragraphs, because Exhibit 17 (Dkt. No. 169-17) contains two affidavits, each containing its own set of numbered paragraphs.

[6] Of course, Defendants maintain that such an interview was never recorded because it did not occur, while Plaintiff alleges that Martinez did interview Shelton, but failed to document the interview.  (*See See* Pl. 56.1(b) ¶ 164; Defs. Resp. 56.1 ¶ 164.)

apartment in which Mr. Newton was shot were on the keychain that Plaintiff had been loaned. (*See* Defs. 56.1 ¶ 58; Pl. 56.1 ¶ 58.)  Martinez obtained the keys and custody of the vehicle upon arresting Plaintiff, but failed to search the vehicle for prints, voucher the car, or photograph the keys, as he was trained to do.  (*See* Pl. 56.1(b) ¶¶ 132–38; Defs. Resp. 56.1 ¶¶ 132–38.)  Early versions of the police report indicated that Newton's car had been in police possession, but later versions omitted this information.  (*See* Pl. 56.1(b) ¶ 140; Defs. Resp. 56.1 ¶ 140.)  Records indicate that Martinez removed this information from the police report immediately before trial. (*See* Pl. 56.1(b) ¶¶ 140–143; Defs. Resp. 56.1 ¶¶ 140–143.)

      B.  Procedural Background

Plaintiff initiated this Action on December 13, 2021.  (*See* Compl. (Dkt. No. 1).) Gallaher, Jones, and City of Peekskill answered on March 15, 2021.  (*See* Dkt. No. 39.) Martinez filed an answer on April 4, 2021.  (*See* Dkt. No. 47ˈ.)

Defendants Westchester County filed a Motion to Dismiss on March 17, 2021, (*see* Not. Mot. to Dismiss (Dkt. No. 41); Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 44)), which the Court granted, (*see* Opinion and Order (Dkt. No. 72)).

Following the completion of discovery and submission of pre-motion letters, and a conference (Dkt. Nos. 128, 135, 136), the Court set a briefing schedule on April 10, 2024 (Dkt. No. 143).  On July 1, 2024, Defendants filed their Motion for Summary Judgment.  (*See* Not. of Mot. for Summ. J. ("Defs. Mot.") (Dkt. No. 157); Mem. of Law in Supp. of Mot. for Summ. J. ("Defs. Mem.") (Dkt. No. 158); Randazzo Decl; Defs. 56.1.)  On August 16, 2024, Plaintiff filed his Opposition.  (Mem. of Law in Opp. to Mot. for Summ. J. ("Pl. Opp.") (Dkt. No. 171); Larkin Decl.; Pl. 56.1; Pl. 56.1(b).)  On September 6, 2024, and September 13, 2024, respectively, Defendants filed a Reply and Counterstatement to Plaintiff's Statement of Additional Material

Facts.  (*See* Defs. Rep. Mem. of Law in Supp. of Mot. for Summ. J. ("Defs. Rep.") (Dkt. No. 183); Defs. Resp. 56.1.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts

showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule

56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

B.  Analysis

As a threshold matter, it is necessary to take stock of the parties and claims that remain in this Action: the remaining claims are for malicious prosecution and denial of a fair trial, and the remaining Defendants are Martinez, Gallaher, the City of Peekskill, and John Does #1–10.[7]

Plaintiff has failed to serve the John Doe Officers.  Plaintiff also offers no evidence regarding the identity of these Officer Defendants.  Discovery in this Action has closed.  (*See* Dkt. No. 114 (ordering parties to complete discovery by February 29, 2024).)  It is within the Court's authority to dismiss unidentified defendants at the summary judgment stage.  *See DiVincenzi v. City of New York*, No. 19-CV-6012, 2023 WL 3756361, at *5 (S.D.N.Y. June 1, 2023) (dismissing unidentified defendants at the summary judgment stage).  Here, because "discovery has closed and the [P]laintiff has had ample time and opportunity to identify and serve [John Doe Officers], it is appropriate to dismiss [John Doe Officers]."  *Tarrant v. City of Mount Vernon*, No. 20-CV-9004, 2022 WL 17070062, at *3 (S.D.N.Y. Nov. 17, 2022) (quoting *Sachs v. Cantwell*, No. 10-CV-1663, 2012 WL 3822220, at *10 (S.D.N.Y. Sept. 4, 2012)).

---

[7] Plaintiff has voluntarily dismissed the Fourth Cause of Action (Failure to Intervene) and Fifth Cause of Action (False Arrest and Imprisonment).  (*See* Stipulation of Party Dismissal (Dkt. No. 177).)

Accordingly, any claims against John Doe Officers are dismissed with prejudice. *See Scott v. City of Mount Vernon*, No. 14-CV-4441, 2017 WL 1194490, at \*33 (S.D.N.Y. Mar. 30, 2017).

As such, the remaining Defendants are Martinez, Gallaher, the City of Peekskill, and the remaining claims are malicious prosecution and denial of a fair trial.

1. Malicious Prosecution

"To state a [Section] 1983 malicious prosecution claim a plaintiff 'must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'" *Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 238 (S.D.N.Y. 2022) (quoting *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022)). To state a claim for malicious prosecution under New York law a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) (quotation marks and citation omitted). In addition, to prevail on a cause of action for malicious prosecution under Section 1983, the plaintiff must establish that "there was [] a . . . sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at \*10 (S.D.N.Y. July 19, 2022) ("In addition to the elements of a state-law malicious prosecution claim, however, to state a federal malicious prosecution claim under [Section] 1983, a plaintiff must also have suffered a post-arraignment deprivation of liberty implicating his Fourth Amendment rights.").

Defendants argue that they are entitled to summary judgment because "Plaintiff's arrest, and subsequent prosecution, were supported by probable cause," and further, because the

Plaintiff cannot show that his indictment and prosecution were the product of malice.  (Defs. Mem. 8.)

        a.   Initiation of a Criminal Proceeding

"Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, a plaintiff may overcome that presumption by demonstrating that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2017 WL 1064682, at *2 (S.D.N.Y. Mar. 20, 2017), *aff'd*, 722 F. App'x 32 (2d Cir. 2018) (citation and quotation marks omitted).  Regarding claims against police officers, "courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors."  *Id*. (quotation marks and citations omitted); *see also Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments.") (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).  Furthermore, officers have been found to have "initiated" a criminal proceeding even when their role was simply to "report[] evidence to the complaining officer."  *Maldonado v. City of New York*, No. 11-CV-3514, 2014 WL 787814, at *6 (S.D.N.Y. Feb. 26, 2014); *see also Johnson v. City of New York*, No. 22-CV-3320, 2023 WL 11868258, at *8 (E.D.N.Y. Sept. 15, 2023) (same); *Roman*, 2022 WL 2819459, at *11–12 (same).

It is undisputed that Martinez initiated the criminal proceedings against Plaintiff when he signed the felony complaint charging him with assault in the first degree.  (*See* Defs. Mem. 10;

Defs. 56.1 ¶ 65; Pl. 56.1 ¶ 65; Randazzo Decl. Ex. P ("Felony Compl.") 1 (Dkt. No. 160-15).)

Further, it is undisputed that either Martinez or Gallaher prepared the felony complaint before

Martinez signed it.  (*See* Pl. 56.1(b) ¶ 178; Defs. Resp. 56.1 ¶ 178; Felony Compl.)  By

"swearing to and signing the charging instruments," *Finnegan v. Berben*, No. 20-CV-10231,

2024 WL 1242996, at *18 (S.D.N.Y. Mar. 22, 2024) (quotation marks omitted), "their actions

could be deemed to have initiated the prosecution," *Maldonado*, 2014 WL 787814, at *6

(quotation marks omitted).  Plaintiff has thus created a triable issue of fact as to whether

Defendants initiated the criminal proceeding against him.  Therefore, this element of malicious

prosecution has been met.

### b. Termination of the Proceeding in Plaintiff's Favor

"[A] dismissal based on the state's express inability to prove its case beyond a reasonable

doubt is sufficient to show a favorable termination [under Section] 1983." *Virgil v. City of New

York*, No. 17-CV-5100, 2019 WL 4736982, at *7 (E.D.N.Y. Sept. 27, 2019); *see also Rosario v.

City of New York*, No. 18-CV-4023, 2019 WL 4450685, at *4 (S.D.N.Y. Sept. 16, 2019)

(concluding Plaintiff had adequately alleged that the proceeding was terminated in the Plaintiff's

favor where "[t]he DA's Office decided not to retry Plaintiff because it did not believe it could

prove the case"); *see also Thompson v. Clark*, 596 U.S. 36, 49 (2022) ("[W]e hold that a Fourth

Amendment claim under [Section] 1983 for malicious prosecution does not require the plaintiff

to show that the criminal prosecution ended with some affirmative indication of innocence.  A

plaintiff need only show that the criminal prosecution ended without a conviction.").

Here, the District Attorney consented to vacate Plaintiff's conviction pursuant to CPL

§ 440.10(1)(h), finding that "the People [would be unable] . . . to establish [Plaintiff's] guilt

beyond a reasonable doubt."  (*See* Larkin Decl. Ex. 28 ("Bender Aff.") 8 (Dkt. No. 169-28).)

The DA's decision "not to retry Plaintiff because it did not believe it could prove the case" is "sufficient to support [a] federal malicious prosecution claim." *Rosario*, 2019 WL 4450685, at *4.

        c. <u>Probable Cause</u>

"[C]ontinuing probable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *see also Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) ("[P]robable cause is a complete defense to a claim of malicious prosecution in New York[.]") (citation omitted). "Probable cause, in the context of malicious prosecution, has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 243 (2d Cir. 2020) (alterations omitted). "The Second Circuit has clarified that probable cause for a malicious prosecution claim means probable cause to believe that [the prosecution] could succeed[.]" *Delanuez v. City of Yonkers*, No. 20-CV-4476, 2022 WL 16540682, at *8 (S.D.N.Y. Oct. 28, 2022) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)) (quotation marks omitted). The Second Circuit has also cautioned courts not to "conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted," because in a malicious prosecution action, "[o]nly the latter kind of probable cause is at issue." *Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).

Furthermore, "[i]f a grand jury returned an indictment for the charges made the subject of litigation, the court will presume the existence of probable cause." *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 54495, at *9 (S.D.N.Y. Jan. 7, 2009), *amended on reconsideration in part on other grounds*, No. 98-CV-4546, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009); *see also Johnson v. City of New York*, No. 23-CV-3018, 2024 WL 3520445, at *7 (S.D.N.Y. July 23,

2024) (applying a "presumption of probable cause" because the plaintiff was indicted by a grand jury). This presumption "may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Creighton v. City of New York*, No. 12-CV-7454, 2017 WL 636415, at *35 (S.D.N.Y. Feb. 14, 2017) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (emphasis removed)). "The plaintiff's avenue for rebuttal is not limited to proof of misconduct in the grand jury alone[.] Rather, the plaintiff may show that the officer misrepresented the facts to the District Attorney or otherwise acted in bad faith in a way that led to the indictment." *Id.* (quoting *Manganiello v. Agostini*, No. 07-CV-3644, 2008 WL 5159776, at *5 (S.D.N.Y. Dec. 9, 2008), *aff'd sub nom. Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)).

"Courts have found bad faith sufficiently alleged where, for example, a plaintiff accused officer defendants of failing to obtain or disclose evidence inconsistent with the plaintiff's guilt, or of failing to inform the district attorney's office of exculpatory evidence." *Johnson*, 2024 WL 3520445, at *7 (citing *McLennon v. New York City*, No. 13-CV-128, 2015 WL 1475819, at *8 (E.D.N.Y. Mar. 31, 2015)). However, merely negligent non-disclosure is insufficient to overcome the presumption of probable cause. *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 116 (W.D.N.Y. 2022) ("[T]he police and prosecutors cannot be said to have improperly concealed evidence every time the plaintiff is able to show that they could have done more or could have disclosed more." (quoting *King v. City of New York*, No. 12-CV-2344, 2014 WL 4954621, at *5 (E.D.N.Y. Sept. 30, 2014)); *see also Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983) ("Undoubtedly, further avenues of investigation were open to the police before they relied on circumstantial evidence of the killer's identity, but their failure to pursue the investigation is not the equivalent of fraud or the suppression of evidence.").

To determine whether the evidence in the record suggests the police lacked probable cause, a court must look to the "totality of the circumstances." *See Stansbury v. Wertman*, 721 F.3d 84, 92–93 (2d Cir. 2013) (rejecting a lower court's "seriatim" evaluation of the evidence suggesting a lack of probable cause); *see also Thomas v. Genova*, No. 23-CV-7452, 2025 WL 583182, at *2 (2d Cir. Feb. 24, 2025) (summary order) (applying a totality of the circumstances approach to probable cause determination on a malicious prosecution claim). The totality of the circumstances test "is no mere formality," *Stansbury*, 721 F.3d at 92, because "[t]he significance of each relevant factor may be enhanced or diminished by surrounding circumstances," *id.* at 93 (quoting *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007)) (alterations adopted).

Generally, "[a]lthough information furnished to police by a person who claims to be a victim of a crime generally 'suffices to establish probable cause,' this presumption of victim reliability only survives in the 'absence of circumstances that raise doubts as to the victim's veracity.'" *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306 (E.D.N.Y. 2012) (first quoting *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir.1994), then *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)) (alterations omitted). "[A]s sources of information go, crime victims are among the most reliable; they usually can provide a first-hand, non[-]hearsay account of the criminal activity." *Riccio v. New York*, 859 F. Supp. 2d 480, 485 (E.D.N.Y. 2012) (quoting *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y.1998)); *see also Kiss v. Torres,* No. 21-CV-10391, 2024 WL 1210941, at *15 (S.D.N.Y. Mar. 19, 2024) ("[T]he law is clear that law enforcement officials are entitled to presume the truthfulness of the reports of crime victims when determining whether they have probable cause to arrest."); *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993) ("The

veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.").

Courts, however, have found police cannot rely on a victim-witness' identification where there are "circumstances that raise doubts as to the victim's veracity." *Abusikin v. City of New York*, No. 18-CV-4582, 2021 WL 930349, at *6 (S.D.N.Y. Mar. 11, 2021) (citing *Singer*, 63 F.3d at 119). Courts have determined the circumstances surrounding an identification reasonably raise questions as to the victim's veracity where, for example, the victim was clearly intoxicated, *see Moroughan v. County of Suffolk*, 514 F. Supp. 3d 479, 525 (E.D.N.Y. 2021); where the plaintiff's facts, if true, would have made the victim's story demonstrably false at the time of the identification, *see Abusikin*, 2021 WL 930349, at *7; or where evidence suggested that the victim was behaving erratically and abusively at the time of the identification, *see Pemberton v. City of New York*, No. 18-CV-7908, 2021 WL 3292209, at *3 (S.D.N.Y. Aug. 2, 2021).

Plaintiff claims that Martinez and Gallaher did or should have understood Newton's statement to Vazeos to be unreliable (and thus insufficient to provide probable cause). Specifically, Plaintiff argues that Defendants Martinez and Gallaher should have known Newton's identification was unreliable because Newton did not initially identify his assailant, but later identified him as a close friend. (*See* Pl. Opp. 12–13, 29–30.) Plaintiff's position, however, has been rejected by courts.

For example, in *Romney v. Black*, No. 14-CV-4512, 2017 WL 1317011 (E.D.N.Y. Mar. 31, 2017), the court held that the inconsistencies in a victim-witness' identifications of his attackers was insufficient to overcome the presumption of probable cause. *See id*. at *7. In that case, the victim had been followed to the plaintiff's house by three men, who pushed him into the plaintiff's home and attacked him. *See id*. at *1. The victim was also stabbed. *See id*. at *1.

At the scene, the victim told police that he had been stabbed by the three men. *See id*. at *2. However, later, he said that the plaintiff stabbed him. *See id*. at *2–3. The court there held that the police were not unreasonable in relying on the victim's later statement, because "the statement implicating plaintiff was made under penalty of perjury and the earlier, allegedly inconsistent statement was made on scene, shortly after the victim had been stabbed, during the chaos of the unfolding investigation." *See id*. at *7.

Regarding delays in identifying assailants, there is a line of cases about delays in *reporting* crimes hold that delay can undermine the witness' credibility. *See Jovanovic v. City of New York*, No. 04-CV-8437, 2006 WL 2411541, at *7 (S.D.N.Y. Aug. 17, 2006) (concluding that the fact that victim-witness waited four days before reporting the crime undermined that witness' credibility), *on reconsideration on other grounds*, No. 04-CV-8437, 2008 WL 355515 (S.D.N.Y. Feb. 7, 2008); *see also Davenport v. City of New York*, No. 15-CV-5890, 2017 WL 4356883, at *10 (E.D.N.Y. Sept. 28, 2017) ("A victim's delay in reporting a crime can be an indication of unreliability."). However, where there is some reasonable explanation for the delay, courts have declined to credit arguments suggesting that the witness was unreliable. *See id.* (collecting cases); *see also Nabatkhorian v. County of Nassau*, No. 12-CV-1118, 2013 WL 1233247, at *9 (E.D.N.Y. Mar. 27, 2013) (discussing that a victim may be reasonably delayed in reporting a crime because of fear). Furthermore, where the delay is "short," courts have found the delay is not an indicator of unreliability. *See Davenport*, 2017 WL 4356883, at *11 (rejecting the argument that a witness' delay rendered the witness not credible where the "delay was only a matter of hours, not days, as in many cases finding a delay indicative of veracity"); *Cyrus v. City of New York*, No. 06-CV-4685, 2009 WL 10676441, at *3 (E.D.N.Y. Feb. 9, 2009) (noting that a delay of three days was not enough to undermine the veracity of a complaint).

The Court is persuaded by the reasoning in these cases. The fact that a victim-witness waits a few hours to identify an attacker and gives inconsistent statements as to the identity of that attacker can be the subject of legitimate explanation, and therefore does not undermine the presumption of probable cause. *See Davenport*, 2017 WL 4356883, at *10 (noting that delay does not undermine probable cause "where. . . .there is a logical explanation for the delay"). Such inconsistency and delay is reasonable if the victim was afraid of reprisal, *see Nabatkhorian*, 2013 WL 1233247, at *9, or is disoriented as a result of the attack, *see Romney*, 2017 WL 1317011, at *7. The Court therefore finds that standing alone, this allegation would not be sufficient to overcome the presumption of probable cause.

Nevertheless, the Court concludes that there are material facts in dispute, which, if interpreted in the light most favorable to Plaintiff, could be found to show that Defendants suppressed exculpatory evidence and fabricated inculpatory evidence, thus vitiating the presumption of probable cause that attached to the investigatory process: First, there is a triable issue of fact as to whether Martinez falsified a second report stating that Newton told Martinez that he was "100% positive that it was Marc Douglas that broke into his house and shot him." (Pl. 56.1 (b) ¶ 64.) Martinez's police report states that on February 25, 2006, Newton made the statement in question to him over the phone. (*See* Randazzo Decl. Ex. E ("Peekskill PD Case Report") 30 (Dkt. No. 160-4).) At Plaintiff's trial, however, Martinez stated that the first time he had spoken to Newton was during a visit to the hospital on February 26, 2006. (*See* Trial Tr. 435:22–26.) This discrepancy creates a question of fact appropriate for a jury's determination.

Second, a reasonable jury could find that evidence from Defendants' acquisition of Newton's car was improperly documented or altered. According to Plaintiff, Newton's car was found in Plaintiff's possession without evidence of the crime. (*See* Pl. 56.1(b) ¶¶ 132–41; Def.

Resp. 56.1 ¶¶ 132–41.)  Though failing to do so was against Peekskill police department procedures, and though Martinez knew failing to do so was against department policy, Martinez failed to voucher the car or the keys.  (*See* Pl. 56.1(b) ¶ 135; Def. Resp. 56.1 ¶ 135.)  Plaintiff argues that this evidence was particularly important because the key to Newton's apartment was on the keychain with Newton's car keys, and discovery of this fact would have undermined the police's case, because the assailant entered into the apartment by force.  (*See* Pl. Opp. 15.)

Third, a reasonable jury could find that Martinez and Gallaher buried and/or intentionally failed to investigate Plaintiff's alibi, including by failing to document a conversation they allegedly had with Marcus Shelton, (*see* Pl. Opp. 17), and failing to interview Eddie Reeves, (*see* Pl. Opp. 20).  Marcus Shelton testified that on the night of Plaintiff's arrest, he was called to the police station by Martinez and asked about Plaintiff's whereabouts during the day of the attack, and Shelton confirmed he had been with Plaintiff all day.  (*See* Pl. 56.1(b) ¶ 156; Larkin Decl. Ex. 2 ("Shelton Dep.") 14:3–16:16 (Dkt. No. 169-2).)  However, Martinez testified that he never spoke to Marcus Shelton.  (*See* Def. Resp. 56.1 ¶ 156; Randazzo Decl. Ex. C. ("Martinez Dep.") 76:7–23 (Dkt. No. 160-2).)

Fourth, Plaintiff claims that circumstantial evidence from the record suggests that Martinez went to the gas station on the Major Deegan Expressway and retrieved and/or destroyed the exculpatory footage of Plaintiff from the day of Newton's attack.  (*See* Pl. 56.1(b) ¶¶ 188–98; Defs. Resp. 56.1 ¶¶ 188–98; Pl. Opp. 21.)  Plaintiff argues that the circumstantial evidence supporting this allegation is that Marcus Shelton and Douglas allegedly both told Martinez that they had been to the gas station on the day of the attack, (*see* Pl. 56.1(b) ¶¶ 146, 161), that Martinez was the "only person" who knew that Plaintiff and Shelton had been at the gas station (other than Plaintiff and Shelton's families), (*see* Pl. 56.1(b) ¶ 196), that when

Plaintiff's attorney retrieved the gas station footage, the attorney found that the only missing tape was the one that included the day of Newton's attack, (*see* Pl. 56.1(b) ¶¶ 188–96), and that Martinez testified in his 2024 deposition that he had gone to the gas station in 2007 and that "one of the workers there" told him the security cameras "were not operable," although though he did not document this fact in any contemporaneous report, (*see* Pl. 56.1(b) ¶ 197). Defendants contend that at least as to the allegation that Martinez was the "only other person" who knew of the footage, Plaintiff overstates the evidence in the record, (*see* Defs. Resp. 56.1 ¶ 196), because Marcus Shelton testified that he, his family, Plaintiff, Detective Martinez, and "*other* detectives who might have been with Martinez" were told that Plaintiff went to the gas station, (*see* Shelton Dep. 27:23–29:4).

To be sure, a number of inferential leaps would be required to find that the surveillance footage was destroyed by Martinez. Namely, a jury would need to find that the surveillance tape existed, that Martinez retrieved it, and that he destroyed it. Nevertheless, while the Court acknowledges that this evidence only weakly supports an inference that Martinez destroyed the evidence in question, it cannot say that no reasonable jury could find as much. Therefore, the Court concludes that Plaintiff has established a triable issue of fact as to this question.

Fifth, Plaintiff raises a triable issue of fact as to whether Officer Gallaher falsely reported that Plaintiff refused to "give [his gun] up." (*See* Pl. Opp. 30; Pl. 56.1(b) ¶¶ 147–49.) In his deposition, Plaintiff stated he had agreed to give the gun to investigators, but that it was his then girlfriend and co-habitant, Monica Lopez, who refused to give the gun up. (*See* Randazzo Decl. Ex. M ("Douglas Dep.") 129:19–136:25 (Dkt. No. 160-12).) However, Officer Gallaher reported that Plaintiff had initially agreed to give police the gun, but "when [they] called him on it[,] he refused to give it up." (*See* Def. Resp. 56.1 ¶ 147; Randazzo Decl. Ex. J (Dkt. No. 160-9).)

It is true that Courts have held that a merely negligent failure to follow leads or disclose exculpatory information cannot rebut the presumption of probable cause.  *See, e.g.*, *Watkins*, 592 F. Supp. 3d at 116 (noting that allegations that police had failed to validate the victim's story, failed to question potential exculpatory witnesses, and "made no effort at all to investigate the elements of the [alleged crime]" "amount[ed] only to negligence" and were insufficient to overcome the presumption that probable cause existed (emphasis removed)); *King*, 2014 WL 4954621, at *23 (holding that police officers did not "deviate so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures" where officers failed to present evidence that the victim's story was inconsistent with physical evidence, other testimony, and surveillance footage (citation omitted)).

However, the Second Circuit has instructed courts to look to the "totality of the circumstances" when assessing probable cause.  *See Stansbury*, 721 F.3d at 92; *see also Thomas*, 2025 WL 583182, at *2; *McIlwain v. City of New York*, No. 16-CV-3133, 2019 WL 988891, at *8 (S.D.N.Y. Mar. 1, 2019) (denying motion for summary judgment on the plaintiff's claim of malicious prosecution where a number of discrepancies demonstrated "'evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith'" (quoting *Savino*, 331 F.3d at 73)).  Here, based on the evidence described above and the reasonable inferences that could be drawn from that evidence, the Court concludes that there are material disputes of fact which, in totality, which could lead a jury to conclude that Defendants acted in bad faith and therefore lacked probable cause.  A jury crediting Plaintiff's version of events therefore could reasonably find that Defendants' probable cause was vitiated by the time of the indictment by evidence suggesting Plaintiff's innocence, and by evidence of bad faith conduct by Defendants. *Anilao v. Spota*, 340 F. Supp. 3d 224, 256 (E.D.N.Y. 2018),

*aff'd*, 27 F.4th 855 (2d Cir. 2022) ("If, after construing all inferences in the light most favorable to plaintiff, a jury could reasonably find that the indictment was secured through bad faith or perjury, the issue of probable cause cannot be resolved by summary judgment, and it will be left to the jury to determine whether the indictment was secured through bad faith or perjury."); *see also Wong v. LaPierre*, No. 07-CV-1110, 2011 WL 13248503, at *10 (N.D.N.Y. Mar. 23, 2011) (holding that a reasonable jury could find that "the possible existence of probable cause was nullified by the [] defendant['s] alleged fabrication and falsification of evidence . . . proffer of false or inaccurate statements, and concealment or suppression of exculpatory evidence")

      d.  <u>Malice</u>

"Lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Torres v. City of New York*, No. 20-CV-4007, 2022 WL 955152, at *9 n.6 (E.D.N.Y. Mar. 30, 2022) (quoting *Ricciuti*, 124 F.3d at 131); *see also Boyd*, 336 F.3d at 78 ("A lack of probable cause generally creates an inference of malice." (citation omitted)). Accordingly, once a court finds "an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well." *Boyd*, 336 F.3d at 78; *see also Ricciuti*, 124 F.3d at 131 ("[A] jury could find that probable cause for the charges against the plaintiffs was lacking, and that finding alone would support an inference of malice.").

Because the Court cannot determine as a matter of law that Martinez had probable cause to prosecute Plaintiff, there is an inference of malice that is "sufficient to withstand summary judgment." *See Rutherford v. City of Mount Vernon*, 698 F. Supp. 3d 574, 605 (S.D.N.Y. 2023); *see also Ricciuti*, 124 F.3d at 131 ("In the present case, as we have just noted, a jury could find that probable cause for the charges against the plaintiffs was lacking, and that finding alone would support an inference of malice.").

e.  Post-Arraignment Liberty Restraint

No Party has provided evidence or pointed to a lack of evidence pertaining to any post-arraignment deprivation of liberty that Plaintiff suffered.  Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P.*, 735 F.3d at 123 (alteration, citation, and quotation marks omitted).  Because Defendants have not pointed to the lack of evidence of post-arraignment deprivation of liberty, accordingly, summary judgment on the malicious prosecution claim cannot be granted in their favor.

2. Fair Trial

"To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating office[r] (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Savarese v. City of New York*, 547 F. Supp. 3d 305, 347 (S.D.N.Y. 2021) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016));  *see also Robertson v. Fluerinord*, No. 23-CV-4977, 2024 WL 4728544, at *7 (S.D.N.Y. Nov. 8, 2024) (same); *Jackson v. Nassau County*, No. 18-CV-3007, 2024 WL 4252047, at *24 (E.D.N.Y. Sept. 20, 2024) (same).  Further, "[b]ecause a lack of probable cause to arrest or prosecute is not a necessary element of a fabricated evidence claim, the existence of probable cause does not defeat

such a claim." *McKinley v. Crevatas*, No. 20-CV-3606, 2023 WL 4364182, at *12 (S.D.N.Y.

July 6, 2023); *see also Giles v. City of Mt. Vernon*, No. 20-CV-05119, 2024 WL 126883, at *8

(S.D.N.Y. Jan. 11, 2024); *Garnett*, 838 F.3d at 278 ("[P]robable cause is no defense to a denial

of the right to a fair trial claim . . ..).

    "[I]n addition to the fabrication of evidence, 'police officers can be held liable for *Brady*

due process violations under [Section] 1983 if they withhold exculpatory evidence from

prosecutors.'" *Moroughan*, 514 F. Supp. 3d at 535 (quoting *Bermudez v. City of New York*, 790

F.3d 368, 376 n.4 (2d Cir. 2015) (alterations omitted)); *see also Bellamy v. City of New York*,

914 F.3d 727, 751 (2d Cir. 2019) ("When police officers withhold exculpatory or impeaching

evidence from prosecutors, they may be held liable under § 1983 for violating the disclosure

requirements of *Brady v. Maryland*."). Nevertheless, "evidence is not suppressed if the

defendant either knew, or should have known, of the essential facts permitting him to take

advantage of any exculpatory evidence." *Hamilton v. City of New York*, No. 15-CV-4574, 2019

WL 1452013, at *23 (E.D.N.Y. Mar. 19, 2019) (quoting *Leka v. Portuondo*, 257 F.3d 89, 100

(2d Cir. 2001)).

    For the reasons discussed below, the Court grants summary judgment as to Plaintiff's

claims about Marcus Shelton's corroboration of Plaintiff's alibi, the existence of the gun, and the

evidence from Newton's car, and denies summary judgment as to all other claims.

### a. Fabrication and Withheld Information

    As discussed previously, the Court holds that Plaintiff has created a triable issue of fact as

to whether Martinez and Gallaher falsified a conversation between Martinez and Jerry Newton

on the day of Plaintiff's arrest, (*see* Pl. 56.1(b) ¶¶ 174–76; Defs. Rep. 56.1 ¶¶ 174–76), and an

allegedly false report that Plaintiff refused to give officers his gun, (Pl. 56.1(b) ¶¶ 147–49; Defs. Resp. 56.1 ¶¶ 147–49).

The Court also determines that Plaintiff has created a triable issue of fact as to whether Martinez falsely reported that Mike Baron told him that "(i) he had been contacted by a person stating that he was [Plaintiff's] brother and this person told him that if anyone asked if Marc Douglas had been in the store on February 25, 2006, he was to tell them 'yes'"; and (ii) while Mike Baron remembered seeing Plaintiff] around the time of the call, "he could not tell [Martinez] for sure the date and time of Douglas' last visit to Lucky Jewelry." (*See* Pl. 56.1(b) ¶ 234; Defs. Resp. 56.1 ¶ 234.) This testimony contradicts Mike Baron's sworn statements during his deposition and at the criminal trial, (*see* Larkin Decl. Ex. 3 ("Baron Dep.") 19:19–25 (Dkt. No. 169-3); Peekskill PD Case Report 31), thereby creating a material factual issue appropriate for jury resolution.

Also as previously discussed, Plaintiff has created a triable issue of fact as to whether Defendants suppressed exculpatory information when they failed to document an interview that Martinez and Gallaher allegedly had with alibi witness Marcus Shelton on the night of the shooting, and failed to note exculpatory evidence having to do with the victim's car. (*See* Pl. 56.1(b) ¶¶ 159–62; Defs. Resp. 56.1 ¶¶ 159–62.) Plaintiff also alleges that Martinez omitted critical information by destroying gas station surveillance footage that would have corroborated Plaintiff's alibi. (Pl. Opp. 28–29.) As discussed above, the Court agrees that the evidence in the record creates a triable issue of fact as to these allegations.

### b. Materiality

In addition to creating a triable issue of fact as to whether a fabrication or omission occurred, Plaintiff must also show that alleged fabrication or omission was "likely to influence a

jury's decision," which "is properly understood to require a showing of the materiality of the false information presented." *Gogol v. City of New York*, No. 15-CV-5703, 2017 WL 3449352, at *10 (S.D.N.Y. Aug. 10, 2017) (citing *Garnett v. Undercover Officer C0039*, No. 13-CV-7083, 2015 WL 1539044, at *8 (S.D.N.Y. Apr. 6, 2015), *aff'd*, 838 F.3d 265 (2d Cir. 2016)).

A statement by a victim and sole eyewitness that is fabricated is "likely to influence the jury verdict." *See Hamilton v. City of New York*, No. 15-CV-4574, 2019 WL 1452013, at *18 (E.D.N.Y. Mar. 19, 2019). This is especially true in this case, where the felony complaint relied entirely on Jerry Newton's statement to police. (*See* Felony Compl. 1.) Therefore, Plaintiff has raised a triable issue of fact as to whether Martinez's alleged falsification of Newton's testimony would've been likely to influence the jury.

The allegedly false statement Martinez reported Mike Baron making was also "likely [to] influence the jury." *Gogol*, 2017 WL 3449352, at *10. Mike Baron was one of Plaintiff's key alibi witnesses. (*See* Pl. 56.1(b) ¶¶ 150, 171–173 (describing Baron as one of Plaintiff's alibi witnesses).) A statement undermining the credibility of his testimony would weaken Plaintiff's alibi considerably, particularly when reported by a police officer. *See Smith v. Barr*, No. 21-CV-2280, 2024 WL 4957281, at *2 (E.D.N.Y. Nov. 12, 2024) (finding that "allegedly false information provided by an officer is particularly likely to be believed by a jury and thus likely to influence the jury's decision" (internal quotation marks omitted)); *Collins v. City of New York*, 295 F. Supp. 3d 350, 372 (S.D.N.Y. 2018) ("[T]he eyewitness testimony of a police officer is information particularly likely to be believed by a jury."). Therefore, a jury would be likely to find the allegedly falsified statement material.

As to the question of the surveillance footage: a reasonable jury crediting Plaintiff's version of events could also determine that such destruction—if it occurred—was material,

because surveillance footage corroborating Plaintiff's alibi would have been likely to influence the jury's decision. *See Seemona Sumasar & Chiara McDonald v. Nassau County*, No. 11-CV-5867, 2016 WL 1240381, at *13 (E.D.N.Y. Mar. 28, 2016) (denying summary judgment on the defendant's due process claim where the evidence plausibly suggested the defendant had suppressed evidence that would have corroborated the plaintiff's alibi).

However, the Court concludes that as a matter of law, Marcus Shelton's corroboration of Plaintiff's alibi, the existence of the gun, and the evidence from Newton's car (including the keys) cannot be suppressed material under *Brady*, and thus cannot plausibly raise a Section 1983 claim, because Plaintiff knew of the existence of this evidence the time of the trial. *See United States v. Muschette*, 392 F. Supp. 3d 282, 295 (E.D.N.Y. 2019) ("[T]here is no improper suppression within the meaning of Brady where the facts are already known by the defendant." (citation omitted)), *aff'd sub nom. United States v. Ramsey*, No. 20-CV-860, 2021 WL 5022640 (2d Cir. Oct. 29, 2021). Plaintiff knew that Marcus Shelton was an alibi witness at the time of trial, as evidenced by the fact that he provided Shelton's name during his initial interview with police, (*see* Pl. 56.1(b) ¶ 146; Defs. Resp. 56.1 ¶ 146), and the fact that his attorney included Shelton's name in her alibi notice, (*see* Pl. 56.1(b) ¶ 211; Defs. Resp. 56.1 ¶ 211). Similarly, it was Plaintiff who told Defendants that he had a 9 mm gun, (*see* Pl. 56.1(b) ¶ 147; Defs. Resp. 56.1 ¶ 147), and therefore the existence of that evidence was known to him. Finally, Plaintiff's attorney raised the car and the attached keys at trial, (*see* Def. 56.1 ¶¶ 138–139; Pl. 56.1 ¶¶ 138–139), undercutting any claims that such evidence was unavailable to him. Therefore, the Court grants summary judgment as to these claims. Because these are the only claims which involved Gallaher, the Court grants summary judgment as to him on the fair trial issue.

c. Causation

"Plaintiff is required to establish not only that the police fabricated evidence, but also that this evidence caused his deprivation of liberty.'" *Savarese*, 547 F. Supp. 3d at 347 (quoting *Falls v. Pitt*, No. 16-CV-8863, 2021 WL 1164185, at *36 (S.D.N.Y. Mar. 26, 2021)). "In this respect, the relevant inquiry is 'whether the liberty deprivations that occurred are legally traceable back even further to the earlier investigatory act of fabrication[.]'" *Falls*, 2021 WL 1164185, at *36 (*quoting Zahrey v. Coffey*, 221 F.3d 342, 352 (2d. Cir. 2000).)

Courts have held that the plaintiff has established a triable issue of fact as to causation where "plaintiff has shown that he would not have been charged with a particular crime absent the fabrication." *Roland v. City of New York*, No. 20-CV-5392, 2024 WL 2832691, at *26 (S.D.N.Y. June 3, 2024) (collecting cases). Here, the Felony Complaint which resulted in Plaintiff's arrest states plainly that the basis of the complaint is the "Victim Jerry Newton's Statement." (*See* Felony Compl. 1.) Therefore, it is undisputed that Jerry Newton's statement caused Plaintiff's arrest, and the arrest is a deprivation of liberty.

Martinez's allegedly fabricated testimony regarding his conversation with Mike Baron, as well as his alleged destruction of the surveillance tapes, also create a triable fact as to causation. A reasonable jury could find that Martinez's inclusion of the allegedly fabricated statement in the police report led to the introduction of the fabricated statement at trial,[8] which ultimately

---

[8] The Court notes that its analysis is confined to Martinez's alleged fabrication on the police report, rather than any statements he may have made at trial. A police officer is absolutely immune from liability under Section 1983 for their testimony at trial. *See Briscoe v. LaHue*, 460 U.S. 325, 326 (1983) (holding that police officers are "absolutely immune" from liability under Section 1983 for testimony "about the performance of their official duties"); *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) ("[A] trial witness [sued] under [Section] 1983 . . . has absolute immunity with respect to *any* claim based on his testimony."); *Sims v. Shapiro*, No. 24-CV-2383, 2024 WL 4168346, at *2 (S.D.N.Y. Sept. 9, 2024) ("Witnesses are absolutely immune from

weakened Plaintiff's alibi and led to his incarceration—a clear deprivation of liberty. *Crespo v. Franco*, No. 22-CV-7345, 2024 WL 4188356, at *7 (S.D.N.Y. Sept. 13, 2024) ("All plaintiffs allege that they were convicted based upon fabricated evidence which, itself, entails a deprivation of liberty."); *Thagard v. Lauber*, 317 F. Supp. 3d 669, 683–84 (W.D.N.Y. 2018) (denying summary judgment where fair trial issues led to a later-overturned conviction). Given these allegations, Plaintiff has raised a triable issue of fact as to causation, and thereby Martinez's Motion is denied as to these claims. However, because none of the allegations against Gallaher are sufficient to make out a claim for a violation of fair trial, Defendants' Motion is granted as to him.

### 3. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity defense, thus, is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013)). Defendants raise qualified immunity as an affirmative defense to Plaintiff's allegations. The Court takes each allegation in turn.

---

liability under Section 1983 for damages for their testimony, even if their testimony was false."); *DiBenedetto v. Coley*, No. 24-CV-1029, 2024 WL 4662979, at *2 (2d Cir. Nov. 4, 2024) (summary order) (same).

a. Malicious Prosecution

"[I]n the qualified immunity context, an officer invoking the probable cause defense need only establish that he or she acted with arguable probable cause[.]" *Schlaepfer v. City of New York*, No. 20-CV-3339, 2022 WL 4484571, at *9 (S.D.N.Y. Sept. 27, 2022) (quotation marks and citation omitted); *see also Kass*, 864 F.3d at 206 ("An officer is entitled to qualified immunity from a federal false arrest and imprisonment claim if he had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged."). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Falls*, 2021 WL 1164185, at *12 (quoting *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)); *see also Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (same).

"[S]ummary judgment for defendants on grounds of qualified immunity is . . . appropriate only . . . if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *Turner v. City of New York*, No. 18-CV-9626, 2019 WL 6173701, at *6 (S.D.N.Y. Nov. 19, 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)). "In the event that there are triable disputes as to the circumstances that could dictate whether the defendants could reasonably believe that his conduct was lawful, summary judgment based on an immunity defense must be denied." *Allen v. N.Y.C. Dep't of Corr.*, No. 06-CV-7205, 2010 WL 1644943, at *15 (S.D.N.Y. Mar. 17, 2010),

*report and recommendation adopted*, No. 06-CV-7205, 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010).

The material factual disputes underpinning the probable cause determination make granting of qualified immunity on malicious prosecution claims inappropriate here, as such facts are material to a determination of reasonableness. *See Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) ("[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." (quotation marks and citation omitted)); *see also Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (holding that when material facts pertaining to immunity are in dispute, the appropriate procedure is to allow the jury to resolve any disputed facts material to the qualified immunity issue, so that the court can make the "ultimate determination of whether the officer's conduct was objectively reasonable"). Accordingly, the Court will not grant Defendants summary judgment on the malicious prosecution claim on the basis that they had arguable probable cause to believe Plaintiff could be successfully prosecuted on the charged offenses. *See Cooper v. Dieugenia*, No. 14-CV-6136, 2017 WL 818367, at *7 (E.D.N.Y. Feb. 27, 2017) ("[G]iven the parties' disputes over key facts and the absence of other material information, the Court cannot determine, as a matter of law, whether officers of reasonable competence could disagree on whether the probable cause test was met."); *Bryant v. Serebrenik*, No. 15-CV-3762, 2016 WL 6426372, at *5 (E.D.N.Y. Oct. 28, 2016) ("The same disputed facts that prevent defendants from establishing probable cause also doom their qualified immunity defense at this stage.").

### b. Fair Trial

Qualified immunity is unavailable to shield Defendants from liability for fabricating or coercing witness statements. *See Jackson*, 2024 WL 4252047, at *32 n.31 (collecting cases). In

*Ricciuti*, the Second Circuit held that when a police officer "creates false information likely to influence a jury's decision and forwards that information to prosecutors," he "violates an accused's clearly established constitutional rights" and qualified immunity is unavailable. *See* 124 F.3d at 130; *see also Galloway v. County of Nassau*, No. 19-CV-5026, 2024 WL 1345634, at *19 (E.D.N.Y. Mar. 29, 2024) ("[I]t was clearly established at the time of this investigation and trial that a reasonable official would have understood that fabricating an inculpatory statement and forwarding that information to prosecutors violated the plaintiff's constitutional right to a fair trial."), *on reconsideration*, No. 19-CV-5026, 2024 WL 2960532 (E.D.N.Y. June 11, 2024); *Days v. Eastchester Police Dep't*, No. 18-CV-11538, 2020 WL 5504433, at *9 (S.D.N.Y. Sept. 9, 2020) (finding it "clearly established" that qualified immunity is unavailable for fabrication claims that raise a triable issue of fact).

Given that the Court has found triable issues of fact as to the fabrication of evidence.

### 4. City of Peekskill's Motion[9]

Under New York common law, "municipalities may be liable, under the doctrine of respondeat superior, for the common law torts, such as false arrest, malicious prosecution, assault, and battery, committed by their employees." *Moore v. City of New York*, No. 22-CV-10957, 2024 WL 3361193, at *9 (S.D.N.Y. July 10, 2024) (quoting *Lepore v. Town of Greenburgh*, 992 N.Y.S.2d 329, 332 (2d Dep't 2014)).

The employer can be held liable for the acts of its employees so long as they "were committed in furtherance of the employer's business and within the scope of employment." *Id.*

---

[9] Defendant Peekskill also asks this Court to grant summary judgment in its favor on Plaintiff's purported *Monell* claims. (*See* Defs. Mem. 34–37.) However, Plaintiff has not asserted a *Monell* claim against the City of Peekskill. (*See* Compl. ¶¶ 170–210 (bringing a *Monell* claim against the County of Westchester).

(quoting *Rivera v. State*, 34 N.Y.3d 383, 389 (2019)). "Since the determination of whether an employee's actions fall within the scope of employment depends heavily on the facts and circumstances of the particular case, the question is ordinarily for the jury." *Barnes v. City of New York*, No. 17-CV-1303, 2021 WL 260092, at *5 (E.D.N.Y. Jan. 26, 2021) (quoting *Beauchamp v. City of New York*, 771 N.Y.S.2d 129, 131 (2d Dep't 2004)). Moreover, an employer may be held liable for the actions of its employees, even where those employees are not party to a lawsuit. *See Triolo v. Nassau County, NY*, No. 16-CV-2085, 2019 WL 5742623, at *8 (E.D.N.Y. Nov. 4, 2019) ("[I]n an action against an employer based upon the doctrine of respondeat superior, the employee allegedly committing the tortious conduct is not a necessary party." (internal citations and quotations omitted)), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Triolo v. Nassau County*, 24 F.4th 98 (2d Cir. 2022).

Here, because the Court declines to grant summary judgment as to Plaintiff's malicious prosecution claims against Martinez and Gallaher, the Court declines to do the same as to Plaintiff's claim of vicarious liability. *See Scott v. City of New York*, No. 16-CV-834, 2020 WL 208915, at *11 (E.D.N.Y. Jan. 14, 2020) (denying summary judgment as to municipal liability where the court also denied summary judgment as to the individual defendants).

Furthermore, although Officer Vazeos is no longer party to this Action, Peekskill may also be held liable for his actions, which the Court determines raise triable issues of fact as to malicious prosecution. Plaintiff alleges that Officer Vazeos coerced or outright falsified Newton's statement to police. (*See* Pl. Opp. 35–37; Pl. 56.1 ¶¶ 40–46; Pl. 56.1(b) ¶¶ 59–76.) Newton's deposition testimony creates a triable issue of fact as to whether his statement identifying Plaintiff was the product of coercion or falsification. Newton testified that Vazeos was the one who first raised Plaintiff in their discussion about the attack. (*See* Newton Dep.

20:6–13, 75:18–20, 105:16–19).  He also testified that Vazeos repeatedly "badgered" him to make an identification, even though he was initially unable to do so.  (*See* Pl. 56.1(b) ¶ 60; Newton Dep. 15:23–24; *see also* Trial Tr. 545:18–46:20.)  Newton further stated under oath that he never "directly" told Vazeos that Plaintiff shot him, (Newton Dep. 20:6–12), that Vazeos wrote the statement himself, (*see* Newton Dep. 20:24), and that the statement was materially false in that it represented that Plaintiff had shot Newton, (*see* Newton Dep. 81:15–82:12). Finally, when asked, Newton stated that he did not "believe" that he had identified Plaintiff as the shooter to Vazeos, notwithstanding the statement produced by Vazeos on his behalf.  (*See* Newton Dep. 84:5.)  Construing all evidence in the light most favorable to Plaintiff, these allegations create a triable issue of fact as to whether Newton's initial identification was coerced or falsified by Officer Vazeos, which is sufficient to rebut the presumption of probable cause. *See Birch v. Town of New Milford*, No. 20-CV-1790, 2023 WL 4684720, at *32–33 (D. Conn. July 21, 2023) (denying summary judgment where there were triable facts as to the veracity of witness testimony), *appeal dismissed*, No. 23-CV-1153, 2024 WL 3083385 (2d Cir. June 21, 2024); *Demosthene v. City of New York*, No. 18-CV-1358, 2019 WL 2436681, at *5 (E.D.N.Y. June 11, 2019) (concluding that the presumption of probable cause had been rebutted where the plaintiff raised a triable issue of fact as to witness coercion); *Zahrey*, 2009 WL 54495, at *12–13 (concluding that allegations of witness coercion were sufficient to create a triable issue of fact as to probable cause).  Because these allegations would raise a triable fact as to probable cause, they would also do so as to malice.  *See Boyd*, 336 F.3d at 78 (noting that once a court finds "an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well").

Because the Court determines that there are material factual disputes as to whether Vazeos, Martinez, and Gallaher maliciously prosecuted Plaintiff, Peekskill is not entitled to summary judgment as to the claim of malicious prosecution. "Because there are questions of fact to be resolved at trial as to the liability of the individual defendants, there are also questions of fact to be resolved at trial as to the liability of [Peekskill]." *Galloway*, 2024 WL 1345634, at *18 n.18; *Rizk v. City of New York*, 462 F. Supp. 3d 203, 230–31 (E.D.N.Y. 2020) (denying defendant-city's motion for summary judgment on respondeat superior claims where the underlying substantive state law claims survived summary judgment).

### III.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied as to the malicious prosecution claim—including the vicarious liability claim against Peekskill—and granted as to any fair trial claims premised on Marcus Shelton's corroboration of Plaintiff's alibi, the existence of the gun, and the evidence from Newton's car (including the keys). The Clerk of the Court is respectfully directed to terminate the pending motion, (Dkt. No. 181). The Court will hold a status conference on May 13, 2025 at 12 P.M. via teleconference.


SO ORDERED.

Dated:   March 31, 2025
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

36